224

## UNITED STATES v. GOBLE.
## SAME v. SCHMIDT.

District Court, S. D. New York.
Oct. 31, 1930.

Robert E. Manley, Acting U. S. Atty., of New York City (Maxwell Shapiro, Asst. U. S. Atty., of New York City, of counsel), for the United States.

John M. Cashin, of New York City, for defendants.

WOOLSEY, District Judge.

Each of these two motions is denied.

I. The facts in these two motions, which were argued together, and in which the seizures were made within a few minutes of each other, are substantially the same.

The seizures both arose from the arrest of the drivers of two Mack trucks, the first with a New York license No. 380,695, and the second with a New York license No. 380,-694.

The trucks in question were stopped almost simultaneously at about 9 o'clock on the morning of March 21, 1930, on a state highway near Tuxedo, N. Y., by two state troopers.

The trucks were stopped in accordance with instructions from a superior officer of the troopers to stop and weigh all trucks which passed, in order to see whether they were loaded beyond their allowed capacity as fixed by the provisions of the New York State Vehicle and Traffic Law.

The Vehicle and Traffic Law of New York state is chapter 71 of the New York Consolidated Laws. Section 14 thereof fixes the dimensions of motortrucks as to width of body, size of tire, etc., and the total weights with loads permitted to such vehicles on state highways. Section 16 provides that plates or markings of adequate size indicating the allowable load should be fastened to the side of all trucks licensed under New York law.

Section 16, after providing penalties for overloading, proceeds as follows:

"In each case of overloading found, the amount of the overload in excess of five percentum of the allowable load shall be unloaded on the side of road or at place where vehicle was weighed."

It is obvious that the rationale of these provisions of the New York Vehicle Laws are to preserve the state highways from damage by traffic too heavy for their surfaces. It is equally obvious that if, after weighing, a truck is found to be overloaded, it should not be allowed to continue its journey in its overloaded condition, for to allow it to proceed would mean risk of further highway damage and a continuing breach of the law by its driver.

Under these provisions of the New York laws, therefore, it is not only the right but the duty of a state trooper, who has weighed a truck and found it overloaded, to ascertain by inquiry or by opening the truck, if it be closed, whether the load is such as to make it possible for him to remove the overload on the spot.

██ In the instant cases, each truck on being weighed was found to be grossly overloaded—Goble's truck by 5,100 pounds and Schmidt's by 4,900 pounds.

The conflict of fact in the affidavits of the two drivers and the two state troopers is merely as to the sequence of the weighing and the investigation of the contents of each truck.

I do not think this sequence is material in these cases, for I think it is perfectly clear that the state troopers had their minds only on enforcing a state law, on discovering whether a state offense had been committed, and on determining the course which they should pursue when they discovered that the defendants were guilty of a violation of a state law.

The incidental discovery by them of evidence leading them to the belief that a violation of the National Prohibition Law (27 USCA), as well as of the Vehicle Law, does not make their inspection of the trucks or the subsequent seizure of the beer illegal.

It is the most natural thing in the world for a state trooper who stops a truck under such circumstances as these to ask, "What is your load?" and for the driver of the truck to answer. That is the way people get into roadside contact under such circumstances. The event did not turn the state troopers into prohibition agents pro hac vice in the hailing and stopping of the trucks and the arrest of the drivers.

The defendant in each case was taken before a justice of the peace in Tuxedo, which was close by, and arraigned for breach of the New York Vehicle Laws, and at the same time charged with illegal transportation of beer under the National Prohibition Act. The arrest for the state offense was therefore not a mere idle gesture.

II. But it is implicit in the contentions on behalf of the defendants that this does not take the matter far enough.

It is claimed that the presence in the trucks of barrels of a kind usual for holding beer did not give rise to a reasonable belief that the defendants were guilty of a breach of the National Prohibition Law, and so did not justify an examination of the contents of the barrels.

██ I think that the answer to this contention must be found in the proper technique for the approach to the solution of a motion of this kind. That technique is to bear in mind: (1) That there is a presumption of the legality of a search and seizure of this kind when made by officers authorized to enforce a law; and (2) that, if a defendant, feeling aggrieved, wishes to challenge the legality of the search and seizure, he must make his motion on papers which are prima facie adequate to displace this presumption.

██ If the moving papers herein had shown that the barrels were labelled as required by regulation II, section 1020, for near beer, the presumption of legality of the search and seizure would have been prima facie displaced. But there is not any such claim made in either motion.

If it be objected, therefore, that the sight of barrels of a kind used for beer in a closed truck would not justify an examination of the contents of the barrels, the answer is that, if the driver Goble said, as he claims to have done, that he had a load of near beer, the barrels are not shown by his affidavit to have been labelled as required under the regulation above mentioned. If he said he had a load of beer, as the trooper's affidavit states, he was confessing when he might have stood mute. The fact that the barrels were filled is shown by the weight of the truck.

Schmidt's case marches pari passu with Goble's in this regard, except for his greater reticence as to his load.

Under the circumstances shown—that both trucks had the name of the same owner painted on them, that their drivers were traveling close together, and, when the trucks were stopped, at once went into a roadside conference, and that it does not appear that the barrels were labelled, as near beer barrels are required to be labelled—the state troopers were justified in dealing with both loads in the same way so far as the National Prohibition Act is concerned.

Settle orders on two days' notice.